UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Civil Action No. 12-2014 (BJR) <br><br> MEMORANDUM OPINION |

**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a motion for summary judgment by Defendant United States Department of Homeland Security ("DHS") and a cross-motion for summary judgment by Plaintiff Judicial Watch, Inc ("Judicial Watch"). Judicial Watch claims that DHS violated the Freedom of Information Act (FOIA) by unlawfully withholding certain records pertaining to the September 11th hijacker, Mohamed Atta. Having reviewed the materials submitted by the parties and the balance of the record, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment. The reasoning for the Court's decision is set forth below.

1

**BACKGROUND**

On September 19, 2012, Judicial Watch submitted a FOIA request to the United States Citizenship and Immigration Services ("USCIS"), a component of DHS, for records pertaining to Mohamed Atta. Eggleston Decl. [19-1] at 3. Judicial Watch specifically requested the following:

> 1. Any and all records concerning, regarding, or relating to the above mentioned Mohamed Atta;
> 2. Any and all of the following forms completed by or related to the above-identified Mohammed Atta:
>    a. I-94 forms;
>    b. I-130 forms;
>    c. I-131 forms;
>    d. I-129 forms;
>    e. I-539 forms; and
>    f. I-20 forms noting transfer of a B-2/B-1 visa;
> 3. Any records of applications the above-identified Mohamed Atta filed in attendance schools including but not limited to flight schools and academies;
> 4. Any and all passports issued to the above-identified Mohamed Atta; and
> 5. Any and all records of the above-identified Mohamed Atta passport applications;
> 6. Any and all records of a passport issued to the above-identified Mohamed Atta to the Conch Republic.

*Id.* at 3-4.

On October 18, 2012, at the direction of the Federal Bureau of Investigation ("FBI"), USCIS denied Judicial Watch's request and withheld the records in full under the exemption found in 5 U.S.C. § 552(b)(7)(A) (hereinafter "Exemption 7(A)") for law enforcement records that could reasonably be expected to interfere with enforcement proceedings. Attach. B to Ex. 1. Judicial Watch filed an administrative appeal on November 26, 2012. Attach. C to Ex. 1. On December 3, 2012, USCIS notified Judicial Watch that it had affirmed the decision to withhold the records in full and that Judicial Watch could seek judicial review of the action under 5 U.S.C. § 552(a)(4)(b). Attach. D to Ex. 1.

On December 17, 2012, Judicial Watch filed the instant Complaint [1], alleging that DHS unlawfully withheld public records requested in violation of FOIA, and that Judicial Watch "will continue to be irreparably harmed unless [DHS] is compelled to conform its conduct to the requirements of the law." Compl. ¶ 12. Judicial Watch requests that the Court order DHS to conduct an adequate search for records responsive to Judicial Watch's FOIA request, produce all non-exempt records responsive to Judicial Watch's FOIA request, and produce a *Vaughn* Index[1] of any responsive records withheld pursuant to a FOIA exemption. *Id.* ¶ 13.

Shortly after Judicial Watch filed its Complaint, the FBI informed USCIS that the law enforcement investigation into the attacks was ongoing and identified specific records that USCIS should continue to withhold "because they are compiled in the FBI's ongoing law enforcement investigation into the September 11, 2001, terrorist attacks, and related law enforcement proceedings." Eggleston Decl. at 5. The FBI also identified a portion of the records that could be released, and USCIS released nine heavily redacted pages to Judicial Watch on or about August 16, 2013.[2] *Id.*

On September 13, 2013, DHS filed a motion for summary judgment, asserting that it (1) conducted an adequate search, (2) produced all reasonably segregable information from the records responsive to Judicial Watch's FOIA request, and (3) properly withheld information pursuant to FOIA Exemption 7(A).[3] Def.'s Mot. at 8-13.

In support of its arguments, DHS submitted (1) a declaration from Jill Eggleston, the Assistant Center Director in the FOIA Unit of USCIS, (2) a declaration from David Hardy, Section Chief of the Record/Information Dissemination Section, Record Management Division

---

[1] A *Vaughn* Index is a detailed account of withheld documents and the justifications for the withholdings. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).
[2] Judicial Watch claims DHS produced the documents on August 23, 2013. Pl.'s Cross-Mot. at 3.
[3] Alternatively, DHS asserts that it properly withheld information pursuant to the exemptions in 5 U.S.C. § 552(b)(6), 5 U.S.C. § 552(b)(7)(C), and 5 U.S.C. § 552(b)(7)(E). *Id.* at 13.

of the FBI, and (3) a *Vaughn* Index, which describes the records responsive to Judicial Watch's FOIA request and the exemption asserted for each of the withheld documents. *See* Eggleston Decl.; Hardy Decl.; *Vaughn* Index [19-1] at 1.

On October 21, 2013, Judicial Watch filed a cross-motion for summary judgment, asserting that DHS has not established that it properly identified and withheld the responsive documents. Pl.'s Cross-Mot. at 5. Specifically, Judicial Watch claims that (1) DHS performed an inadequate search, or alternatively, that DHS produced an inadequate *Vaughn* Index, and (2) DHS did not satisfy its burden of proof under Exemptions 7(A) and 7(E). *Id.* at 5, 9.

## LEGAL STANDARD

The purpose of the FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society." *Critical Mass Energy Product v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (citing *F.B.I. v. Abramson*, 456 U.S. 615, 621 (1982)). As such, the FOIA allows public access to official information by requiring federal agencies to release all records responsive to a request for production. *Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 131 (D.D.C. 2013) (citing 5 U.S.C. § 552(a)(3)(A)). This mandate is subject to nine exemptions, which are aimed at protecting "legitimate governmental and private interests [that] could be harmed by release of certain types of information . . . ." *Abramson*, 456 U.S. at 621; *see* 5. U.S.C. § 552(b). The nine exemptions are "construed narrowly in keeping with [the] FOIA's presumption in favor of disclosure." *Vaughn*, 484 F.2d at 823.

The majority of FOIA cases can be resolved on summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A defendant agency that seeks summary judgment in a FOIA case must demonstrate that no material facts are in dispute, "even when the underlying facts are viewed in the light most favorable to the requester."

4

*Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983) (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 358 (D.C. Cir. 1980)); *see* Fed. R. Civ. P. 56(a). The agency must also demonstrate that (1) "it has conducted an adequate search for responsive records," and (2) "each responsive record that it has located has been produced to the plaintiff or is exempt from disclosure." *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 21-22 (D.D.C. 2012). In addition, the agency must produce "[a]ny reasonably segregable portion of a record after deletion of the portions which are exempt under [Exemption 7]." 5 U.S.C. § 552(b)(7) (2006).

### A. Legal Standard for Adequacy of a Search

Where a plaintiff challenges the adequacy of an agency's search, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. Whether the search was reasonable is dependent upon the circumstances of the case. *Id.*; *see also Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("[A]dequacy is measured by the reasonableness of the effort in light of the specific request."). To demonstrate the adequacy of the search, an agency may rely solely on "a reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). A court must give substantial weight to an agency's affidavits, and the presumption of good faith accorded to such affidavits "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Nat'l Whistleblower Ctr.*, 849 F. Supp. 2d at 22 (quoting

*SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) (internal quotation marks omitted).

**B. Legal Standard for Withholding Pursuant to an Exemption**

Where a plaintiff challenges an agency's withholding, "the burden is on [the agency] to establish [its] right to withhold information from the public . . . ." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980). A defendant agency may meet this burden "by providing the requester with a *Vaughn* [I]ndex, adequately describing each withheld document and explaining the exemption's relevance." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005) (citing *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). An agency may rely on affidavits in a *Vaughn* Index to establish that a withholding is proper, provided that the affidavits: (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail," (2) "demonstrate that the information withheld logically falls within the claimed exemption," and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Elect. Privacy Info. Ctr.*, 384 F. Supp. 2d at 106 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). In assessing the adequacy of a *Vaughn* Index, a court will "focus on the functions of the *Vaughn* Index, not the length of the document descriptions," and will find it sufficient "so long as [it] give[s] the reviewing court a reasonable basis to evaluate the claim of privilege." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006). An agency "is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citing *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). With regard to Exemption 7 specifically, "[a law enforcement agency's] decision to invoke

[E]xemption 7 is entitled to deference." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998).

## ANALYSIS

**A. Adequacy of the Search**

*1. In General*

As previously noted, in order to prevail on a summary judgment motion, an agency must show that it conducted a search reasonably calculated to locate records responsive to the FOIA request. *See Nat'l Whistleblower Ctr.*, 849 F. Supp. 2d at 21-22. Judicial Watch contends that material doubt exists as to whether DHS conducted a search reasonably calculated to uncover specific primary immigration records that were requested "because Defendant's response does not specifically address or identify any . . . individual records[4] in its motion and declarations." Pl.'s Cross-Mot. at 6.

The declaration by Jill Eggleston of the USCIS FOIA Unit, which DHS filed in support of its motion, is sufficient on its own to establish that the search was adequate, as it is reasonably detailed, states the search terms and type of search performed, and avers that all potentially responsive files were located and searched. Eggleston Decl.; *see Valencia-Lucena*, 180 F.3d at 326. The declaration attests that USCIS employees determined that the relevant records would be located within the program offices for Fraud Detection and National Security, Service Center Operations, and the Field Office Directorate. *Id.* ¶ 22. Eggleston states that USCIS then directed staff within those offices to search for the appropriate documents, and the employees within each of these offices utilized "a variety of DHS computer databases that store records and data relating to the processing of immigration benefits and petitions, including the Interagency Border

---

[4] The records at issue are applications filed in attendance schools, passports, passport applications, and forms I-94, I-130, I-131, I-129, I-539, and I-20. Attach. A to Ex. 1 at 2.

7

Inspection System (IBIS), Computer Linked Application Information Management System (CLAIMS), Central Index System (CIS), National File Tracking System (NFTS), and the Person Centric Query System (PCQS)." *Id.* She adds that the employees also searched "their personal records for paper documents, as well as any personal electronic databases, including computer hard drives, shared folders, and email archives." *Id.* Eggleston also provides the specific search terms used by USCIS employees to conduct the search, including "the records' subject's name, date of birth, place of birth, and the subject's application receipt number." *Id.*

*2. The Three Publicly Released Documents*

Judicial Watch also takes issue with the failure of DHS to identify and produce certain documents pertaining to Atta that had previously been made public by the 9-11 Commission, specifically an I-94 form, notes from an INS official, and a B1/B2 Five Year Visa. Pl.'s Cross-Mot. at 6. Judicial Watch claims that "the absence of any discussion by [DHS] in the record of these specific documents is a material indication that the search was insufficient, and if the records are indeed within the responsive documents, [DHS] has inadequately identified them in its *Vaughn* Index and declarations." *Id.* at 6-7.

This claim is unpersuasive. First, the record does not demonstrate that the documents were in the custody and control of USCIS at the time of the FOIA request. *See* Def.'s Mot. at 3 ("Plaintiff's reference to the general existence of three documents . . . is not evidence that the three documents were in USCIS' custody and control at the time of Plaintiff's FOIA request."); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 151 (1980) ("agency possession or control is prerequisite to triggering any duties under the FOIA"). The Eggleston Declaration expressly references the specific immigration forms sought by Judicial Watch and provides a detailed description of the search procedures that USCIS undertook based on the

information requested. Eggleston Decl. at 4-6. Moreover, the records in question were created under USCIS's predecessor agency, Immigration and Naturalization Services ("INS"), which was under the Department of Justice, rather than the Department of Homeland Security. Hardy Decl. at 7. Because the records from INS were distributed among USCIS, Customs and Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE"), *Id.*, it cannot be assumed that the records were in the custody and control of USCIS at the time of the FOIA request. *See Kissinger*, 445 U.S. at 151 ("The guidelines state that FOIA refers . . . only to records in being and in the possession or control of an agency . . . . [It] imposes no obligation to compile or *procure* a record in response to a request.") (quoting Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act 23-24 (June 1967), Source Book I, pp. 222-23) (internal quotation marks omitted).

Second, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate . . . [because] a reasonable and thorough search may have missed [it]." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 n.7 (D.C. Cir. 1995)); *see also Jennings v. U.S. Dep't of Justice,* 230 F. App'x 1 (D.C. Cir. 2007) ("the adequacy of a FOIA search is generally determined not by the fruits of the search but by the appropriateness of the methods used to carry out the search") (quoting *Iturralde*, 315 F.3d at 315); *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 36 (D.D.C. 2013) ("The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.") (quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). Consequently, even if USCIS had the documents in its possession, its

failure to produce them as part of Judicial Watch's FOIA request does not alone render the search inadequate.

DHS submitted an affidavit describing the search with specificity. Judicial Watch does not allege that USCIS failed to search a particular location that was likely to contain the specific records sought, but rather assumes USCIS had the records in its custody. That is insufficient to create a "material doubt" as to whether USCIS "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351; *see also Iturralde*, 315 F.3d at 315 (holding that although a court may place significant weight on the absence of a particular document, the plaintiff could not overcome an adequate agency affidavit without demonstrating that the defendant "refused to interview government officials for whom there was strong evidence that they might have been helpful," "failed to search particular offices or files where the document might well have been found," or "ignored indications in documents found in its initial search that there were additional responsive documents elsewhere") (citing *Valencia-Lucena*, 180 F.3d at 327-28; *Campbell*, 164 F.3d at 28).[5]

### B. Documents Withheld under Exemption 7(A)[6]

Exemption 7(A) protects from disclosure certain "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To justify a withholding under Exemption 7(A), an agency must demonstrate that (1) "a law enforcement proceeding is pending or prospective," and (2) "release of the information could reasonably be expected to cause some articulable harm to the

---

[5] Although DHS's affidavit demonstrates that the agency has conducted an adequate search, it would have been preferable for there to have been an explanation from DHS as to why the three documents are missing from the production of documents produced.

[6] Because the documents in question are exempt under 7(A), the Court need not address Defendant's claims that the withheld documents are also covered by FOIA Exemptions 6, 7(C), and 7(E).

proceeding." *Voinche v. F.B.I.*, 46 F. Supp. 2d 26, 31 (D.D.C. 1999). There need not be a "presently pending enforcement proceeding," but instead, "it is sufficient that the government's ongoing . . . investigation is likely to lead to [enforcement] proceedings." *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003). Courts owe "some measure of deference to the [E]xecutive in cases implicating national security, a uniquely executive purview." *Id.* at 926-927; *see also Zadvydas v. Davis*, 533 U.S. 678, 696 (2001) (finding that terrorism or other special circumstances might warrant "heightened deference to the judgments of the political branches with respect to matters of national security").

According to the Hardy Declaration, "responsive records are contained in files pertaining to the FBI's investigation of the September 11, 2001 terrorist attacks." Hardy Decl. ¶ 8. Hardy further asserts that "[t]he investigation is ongoing and clearly within the law enforcement duties of the FBI to detect and undertake investigations into possible violations of Federal criminal and national security laws." *Id.* (citing 28 U.S.C. § 533). He asserts that the records in question were compiled for law enforcement purposes and "readily meet the threshold for applying FOIA Exemption 7." *Id.* Hardy concludes that "[t]he FBI has determined that disclosure of any of the specified responsive records in the midst of this active, on-going investigation is reasonably expected to interfere with that investigation as well as any resulting prosecutions." *Id.* ¶ 10.

Judicial Watch claims that DHS "has not provided . . . a particularized explanation of how disclosing primary immigration documents . . . could be reasonably expected to interfere with any ongoing law enforcement investigations . . . ." Pl.'s Cross-Mot. at 10. Judicial Watch further claims that because the records in question involve an individual who died over twelve years ago, the FBI's reliance on a "generally stated ongoing investigation into the September 11,

2001 terrorist attacks" is "broad and vague" and therefore insufficient for purposes of Exemption 7(A). *Id.* at 11 (internal quotation marks omitted).

In light of the deference owed to the agency, *Campbell*, 164 F.3d at 32, the Court concludes that DHS properly withheld the documents. The Hardy Declaration demonstrates that the information in question is part of an ongoing investigation into the September 11, 2001 terrorist attacks, which may lead to future law enforcement proceedings, and that the FBI determined that disclosure of any of the records in question in the midst of the ongoing investigation is reasonably expected to interfere with enforcement proceedings. Hardy Decl. ¶ 8. Hardy explains that "[p]roviding a detailed description of the material within these specific USCIS records concerning Mohamed Atta would undermine the very interests that USCIS and FBI seek to protect under Exemption 7(A)." *Id.* at 7.

Furthermore, Exemption 7(A) applies to "multiple intermingled investigations," *Cucci v. Drug Enforcement Admin.*, 871 F. Supp. 508, 512 (D.D.C. 1994), so the fact that Atta is dead, as Judicial Watch repeatedly points out, does not render the exemption irrelevant, because the investigation into the 9-11 attacks is still ongoing. *See N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978) ("disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.") (internal quotation marks omitted).

**C. Adequacy of the *Vaughn* Index**

A defendant agency may prevail on summary judgment by producing a *Vaughn* Index detailing the responsive records and reasons for their withholding, if applicable. *See Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 106. Judicial Watch contends that there is material doubt as to the adequacy of the *Vaughn* Index because DHS did not correlate the claimed exemption with

particular records or parts of records to which the exemption applies. Pl.'s Cross-Mot. at 7-8 (citing *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) ("Specificity is the defining requirement of the *Vaughn* Index and affidavit; affidavits cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.") (internal citation omitted)). Instead, DHS grouped responsive documents into four broad categories: "memoranda," "emails," "database searches," and "other investigative documents." Hardy Decl. ¶¶ 12-15.

The *Vaughn* Index is sufficient. This Circuit has held that "[b]ecause generic determinations are permitted, the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986); *see also Judicial Watch, Inc.*, 449 F.3d at 147 ("[The court has] never required repetitive, detailed explanations for each piece of withheld information–that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof."). Furthermore, because courts owe "substantial weight to . . . agency explanations in the national security context," *King*, 830 F.2d at 236, and DHS claims that "providing a detailed description of the material within these specific DHS records concerning Mohamed Atta would undermine the very interests that the FBI seeks to protect under Exemption 7(A)," Hardy Decl. at 7, DHS's grouping of the withheld documents into four general categories satisfies the requirement under 5 U.S.C. § 552(b)(7)(A). *See Johnson*, 310 F.3d at 776 (an agency is not required to provide so much detail that the exempt material would be effectively disclosed).

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**. An Order consistent with this Memorandum Opinion shall issue.

DATED this 24th day of July, 2014.

_Barbara J. Rothstein_

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE